# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

EZEKIEL SCOTT,
*Plaintiff*,

v.

THOMAS LAZURE, *et al.*,
*Defendants*.

No. 3:19-cv-713 (VAB)

## RULING ON MOTION FOR JUDGMENT ON THE PLEADINGS
## AND INITIAL REVIEW ORDER

Ezekiel Scott ("Plaintiff") filed a Complaint *pro se* under 42 U.S.C. § 1983 while incarcerated, seeking damages and equitable relief against Thomas Lazure ("Sergeant Lazure"), his dog, K-9 officer Jett ("K-9 Jett"), and the Town of West Hartford (collectively, "Defendants"), for an alleged use of excessive force in effecting Mr. Scott's arrest.

Mr. Lazure has moved for judgment on the pleadings.

For the reasons explained below, the Court **GRANTS** the motion for judgment on the pleadings, **DISMISSES** all federal claims in the Complaint, and declines to exercise supplemental jurisdiction over the remaining state law claims.

## I.     BACKGROUND[1]

On May 10, 2016, Sergeant Lazure was allegedly driving home from his shift as a West Hartford K-9 Officer in his marked K-9 car when he heard on the police radio a report of a

---

[1] Mr. Scott attached a copy of the police report to his Complaint. Ex. A: Incident Report, ECF No. 1-1 at 1 (May 10, 2016). The incidents described therein are essentially the same as those in the Complaint; therefore, the Court includes the more detailed facts from the police report. *See* Fed. R. Civ. P. 10 (c) ("A statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion. A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); *Roth v. CitiMortgage Inc.*, 756 F.3d 178, 180 (2d Cir. 2014) (noting that consideration of a complaint is limited "to the factual allegations in [the] . . . complaint, which are accepted as true, to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit" (quoting *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993)).

shoplifting at Sears. Ex. A: Incident Report, ECF No. 1-1 at 1 (May 10, 2016) ("Incident Report"). The suspect was allegedly identified as a "large black male" wearing a sweatshirt and black pants. *Id.* When the Loss Prevention Officers at Sears attempted to stop the suspect, the suspect allegedly threatened to shoot them. *Id.* The suspect allegedly left the store parking lot in a tan Buick driven by a woman, with the car trunk open. *Id.*

Shortly thereafter, while Sergeant Lazure was still in traffic on Interstate-84, he allegedly saw a Buick with the trunk open. *Id.* Sergeant Lazure allegedly notified the police dispatch ("Dispatch") that he may have seen the suspect's vehicle. *Id.* After Sergeant Lazure followed the car and got closer, he allegedly verified that the license plate matched that of the suspect's car from the police radio. *Id.* Sergeant Lazure then allegedly notified Dispatch that he had the suspect's car and turned on his emergency lights. *Id.* When the car stopped, a black man allegedly jumped out of the passenger side and grabbed his waistband. *Id.* The man allegedly matched the description of the suspect who had threatened to shoot the Sears Loss Prevention Officers. *Id.*

The man, later identified as Mr. Scott, allegedly grabbed his waistband and repeatedly stated he had to urinate. *Id.* at 2. Sergeant Lazure allegedly pointed his gun at Mr. Scott and ordered Mr. Scott to show his hands. *Id.* After several commands, Mr. Scott allegedly complied. *Id.* When Sergeant Lazure allegedly ordered Mr. Scott to turn around, Mr. Scott said that voices were telling him to run. *Id.* When Sergeant Lazure ordered him not to run, Mr. Scott allegedly started backing away. *Id.*

Mr. Scott alleges that Sergeant Lazure's shouted orders exacerbated his mental illness and Sergeant Lazure did not afford him time to process the commands before using force. Compl., ECF No. 1 ¶¶ 10–14 (May 10, 2019).

When Mr. Scott turned to run, Sergeant Lazure allegedly grabbed his shirt and pulled him back. Incident Report at 2. Sergeant Lazure allegedly holstered his gun and held both of Mr. Scott's arms. *Id.* Sergeant Lazure allegedly "yelled to the suspect telling him to stop resisting several times," but Mr. Scott "aggressively flailed his forearms towards" Sergeant Lazure's and struck both of his arms, stating "the voices are telling me to hurt you!" *Id.*

Mr. Scott allegedly broke free and ran away. *Id.* In response, Sergeant Lazure allegedly hit the emergency button on his duty belt, which opened the rear door of his vehicle and released his certified K-9 partner, Jett. *Id.* Sergeant Lazure allegedly gave K-9 Jett the bite command, and followed as K-9 Jett chased Mr. Scott. *Id.*

K-9 Jett allegedly jumped and bit Mr. Scott on the right arm, as he ran behind a house. *Id.* With the K-9 Jett still on his arm, Mr. Scott allegedly went up the back steps and tried to enter the house, which was locked. *Id.*

As Sergeant Lazure approached, he allegedly saw Mr. Scott choking K-9 Jett while saying, "good puppy, the voices are telling me to hurt you, good puppy." *Id.* at 2–3. Sergeant Lazure allegedly heard the dog make a gurgling noise, so he ran and pushed Mr. Scott into the doorway. *Id.* at 3. With the dog still on his arm, Mr. Scott allegedly continued to resist Sergeant Lazure, who felt he "had no control over the suspect." *Id.* As the situation escalated, Sergeant Lazure allegedly deployed his Taser into Mr. Scott's abdomen area with no appreciable effect. *Id.*

Mr. Scott allegedly continued resisting, although Sergeant Lazure ordered him to stop, and stated that he would call off K-9 Jett when he complied. *Id.* Area residents allegedly videotaped the incident and urged Sergeant Lazure to call his dog off Mr. Scott. *Id.* Eventually, back-up officers arrived, and Mr. Scott was allegedly successfully handcuffed. *Id.*

3

Mr. Scott allegedly suffers from seizures, and an ambulance was requested at the scene. *Id.* Mr. Scott also alleges he suffers from diagnosed psychological disorders, and that his mental state deteriorated during the encounter with Sergeant Lazure as he "continued to yell and make threats to shoot" Mr. Scott. Compl. ¶¶ 9, 12. Mr. Scott alleges he relayed his distress to Sergeant Lazure, who nevertheless allegedly proceeded violently. *Id.* ¶ 14. Finally, Mr. Scott alleges that Sergeant Lazure threatened to "sic his dog" on the area residents who attempted to diffuse the situation. *Id.* ¶ 20.

On May 10, 2019, while incarcerated with the Connecticut Department of Correction, Mr. Scott filed his Complaint against Sergeant Lazure and K-9 Jett. Compl. at 1–3. Mr. Scott's Complaint omits K-9 Jett as a Defendant but includes the Town of West Hartford as a Defendant. *Id.* ¶ 5.

Mr. Scott claims Sergeant Lazure used excessive force by engaging K-9 Jett, thus violating his rights under the Fourth Amendment of the U.S. Constitution and Article First, §§ 7 and 9 of the Connecticut Constitution. *Id.* ¶ 23. Mr. Scott also claims that the Town of West Hartford violated his Fifth, Eighth, and Fourteenth Amendments under the U.S. Constitution "by not implementing polices that comply with the Americans with Disabilities Act that agencies under its control must adhere to." *Id.* ¶ 24.

On November 27, 2019, Mr. Lazure moved for judgment on the pleadings. Mot. for J. on the Pleadings, ECF No. 21 (Nov. 27, 2019) ("Def.'s Mot."); Mem. of Law in Supp. of Def's Mot., ECF No. 21-1 (Nov. 27, 2019) ("Def's Mem.").

On January 23, 2020, the Court *sua sponte* extended the time for Mr. Scott to respond until February 28, 2020. Order, ECF No. 23 (Jan. 23, 2020).

On February 12, 2020, Mr. Scott moved for an extension of time of twenty-one days to respond to the motion. Mot. for Ext. of Time, ECF No. 24 (Feb. 12, 2020).

On February 14, 2020, the Court granted Mr. Scott's motion for an extension of time, allowing him until March 13, 2020, to file a response but noted that it "[wa]s not inclined to grant any further extensions of time." Order, ECF No. 25 (Feb. 14, 2020)

On April 20, 2020, Mr. Scott filed his response to the motion for judgment on the pleadings. Resp. to Mot. to Dismiss, ECF No. 26 (Apr. 20, 2020) ("Pl.'s Resp."). He included as an exhibit another opposition, which he claims was "the original copy which was mailed on 2-14-2020 but was never received" by the Court. Opp'n, ECF No. 26-1 (Apr. 20, 2020).

On May 4, 2020, Sergeant Lazure filed his reply. Reply, ECF No. 28 (May 4, 2020).

## II.     STANDARD OF REVIEW

### A.  Motion for Judgment on the Pleadings

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Motions for judgment on the pleadings under Rule 12(c) are reviewed under the same standard as motions to dismiss under Rule Federal Rule of Civil Procedure 12(b)(6). *Haden v. Paterson*, 594 F.3d 150, 157 n.4 (2d Cir. 2010).

"To survive a Rule 12(c) motion, the complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face." *Jaffer v. Hirji*, 887 F.3d 111, 114 (2d Cir. 2018). When determining the sufficiency of a complaint the district court is limited "to the factual allegations in [the] . . . complaint, which are accepted as true, to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiffs' possession or of which plaintiffs had

knowledge and relied on in bringing suit." *Roth v. CitiMortgage Inc.*, 756 F.3d 178, 180 (2d Cir. 2014) (quoting *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citations omitted). "To state a plausible claim, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Nielsen v. AECOM Tech. Corp.*, 762 F.3d 214, 218 (2d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555).

Complaints filed by *pro se* plaintiffs, however, "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (internal quotation marks omitted) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F. 3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing the "special solicitude" courts afford *pro se* litigants).

### B. Initial Review Order

Under 28 U.S.C. § 1915A(b), district courts must review prisoners' civil complaints against governmental actors and *sua sponte* "dismiss . . . any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also Liner v. Goord*, 196 F.3d 132, 134 & n.1 (2d Cir. 1999) (explaining that, under the Prisoner

6

Litigation Reform Act, *sua sponte* dismissal of frivolous prisoner complaints is mandatory);
*Tapia-Ortiz v. Winter*, 185 F.3d 8, 11 (2d Cir. 1999) ("Section 1915A requires that a district
court screen a civil complaint brought by a prisoner against a governmental entity or its agents
and dismiss the complaint *sua sponte* if, *inter alia,* the complaint is 'frivolous, malicious, or fails
to state a claim upon which relief may be granted.'" (quoting 28 U.S.C. § 1915A)).

 The Federal Rules of Civil Procedure require that a plaintiff plead only "a short and plain
statement of the claim showing that the pleader is entitled to relief," *see* Fed. R. Civ. P. 8(a)(2),
to provide the defendant "fair notice of what the . . . claim is and the grounds upon which it
rests," *see Twombly*, 550 U.S. at 555.

 A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the
speculative level," and assert a cause of action with enough heft to show entitlement to relief and
"enough facts to state a claim to relief that is plausible on its face." *Id.* at 555, 570. A claim is
facially plausible if "the plaintiff pleads factual content that allows the court to draw the
reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at
678.

 Although the Federal Rules of Civil Procedure do not require "detailed factual
allegations," a complaint must offer more than "labels and conclusions," "a formulaic recitation
of the elements of a cause of action," or "naked assertion[s] devoid of "further factual
enhancement." *Twombly*, 550 U.S. at 555–57. Plausibility at the pleading stage is nonetheless
distinct from probability, and "a well-pleaded complaint may proceed even if it strikes a savvy
judge that actual proof of [the claim] is improbable, and . . . recovery is very remote and
unlikely." *Id.* at 556 (internal quotation marks omitted).

### III.     DISCUSSION

Sergeant Lazure moves for judgment on the pleadings on three grounds: (1) Mr. Scott cannot establish a violation of his Fourth Amendment rights, (2) Mr. Scott should be judicially estopped from arguing that excessive force was used against him, and (3) Sergeant Lazure is protected by qualified immunity. Sergeant Lazure also argues that Mr. Scott's claims under the Fifth and Eighth Amendment, the Americans with Disabilities Act ("ADA"), and the Connecticut Constitution lack merit.

In addition, the Court must review Mr. Scott's prisoner civil complaints and dismiss any portion of the Complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b). Because Mr. Scott was incarcerated when he filed this case, the Court also addresses any possible claims against K-9 Jett and the Town of West Hartford.

Sergeant Lazure has attached to his motion a copy of Mr. Scott's plea transcript and bases his second ground for relief on statements contained in the transcript. The Court may take judicial notice of statements made during Mr. Scott's plea hearing to establish that the statements were made and their legal effect, but not for the truth of the matters asserted in the statements. *See, e.g.*, *Torres v. Vasta*, Mo. 18-CV-8706 (KMK), 2019 WL 4640247, at *6 n.6 (S.D.N.Y. Sept. 24, 2019) ("The Court may take judicial notice of statements made during Plaintiff's plea hearing and his Certificate of Disposition, not for their truth but for their legal effect." (collecting cases)); *see also* Fed. R. Evid. 902(5) ("The following items of evidence are self-authenticating; . . . (1) Domestic Public Documents That Are Sealed and Signed . . . (2) Domestic Public Documents That Are Not Sealed but Are Signed and Certified . . . (4) Certified Copies of Public Records . . . .").

The Court will take judicial notice of the transcript to show that Mr. Scott entered a guilty plea to a charge of resisting arrest but not for the truth of his statements. If the Court were to consider the truth of Mr. Scott's statements, it would be required to convert this motion to a motion for summary judgment, an action the Court declines to take. *See* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule . . . 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."). As a result, and because the Court will find Sergeant Lazure is protected by qualified immunity, it will not address the arguments made for judicial estoppel.

### A. Excessive Force Claim Against Sergeant Lazure

Claims for use of excessive force by police officers in the course of an arrest or other seizure are considered under the reasonableness standard of the Fourth Amendment. *See Graham v. Connor*, 490 U.S. 386, 394–95 & n.10 (1989) (claim that police officer used excessive force against free citizen during an arrest was evaluated "under the Fourth Amendment and its 'reasonableness' standard" and not as a Fourteenth Amendment substantive due process claim). To prevail on an excessive force claim, Mr. Scott must show that the amount of force used was objectively unreasonable either as to when or how the force was applied, and that, as a result of the use of force, he suffered some compensable injury. *Id.* at 396; *Maxwell v. City of New York*, 380 F.3d 106, 108 (2d Cir. 2004).

Whether a given use of force is excessive depends on "the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene,

rather than with the 20/20 vision of hindsight" and must allow "for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396–97.

Sergeant Lazure argues that his actions were reasonable and did not violate Mr. Scott's' constitutional rights. Def's Mem. at 13–18. First, Sergeant Lazure asserts that because Mr. Scott "was wanted in connection with a serious felony (Robbery in the Second Degree), had already disobeyed lawful commands to not flee, and [Sergeant] Lazure had every reason to believe that plaintiff could possess a firearm," his use of K-9 Jett was reasonable. *Id.* at 15–16. Sergeant Lazure emphasizes that he was the lone officer at the scene "[u]nder these tense, uncertain and rapidly evolving circumstances." *Id.* at 16. Second, Sergeant Lazure argues that based on both his report and Mr. Scott's allegations that he choked K-9 Jett, his "decision to deploy his Taser to try to subdue plaintiff was entirely reasonable." *Id.* at 17. Furthermore, Sergeant Lazure contends that because Mr. Scott "expressly allege[d] in his complaint that the Taser 'had no noticeable effect' on him," he could not now claim that the Taser injured him. *Id.* at 18 (quoting Compl. ¶ 18).

In response, Mr. Scott argues that Sergeant Lazure "violated his Fourth [A]mendment right to be free from the use of excessive force by engaging his canine and using his Taser to restrain" him." Pl.'s Resp. at 1. Mr. Scott submits that he "made it known that he was suffering from some sort of mental illness when he reiterated that the voices in his head told him to run," and asserts that Sergeant Lazure "should of [sic] used sound judgement when he became aware of the plaintiff's mental illness." *Id.* According to Mr. Scott, "[t]here was no need to release the

K-9[, w]hich resulted in cruel and unusual punishment, excessive force, failed due process and a violation of the [ADA]." *Id.* at 2–3.

In reply, Sergeant Lazure argues that "based on the admissions contained in [P]laintiff's own complaint regarding his active physical resistance, and his conduct 'choking' [K-9 Jett], it is simply impossible for [P]laintiff to prevail in this action." Reply at 2.

The Court disagrees.

Because excessive force is a fact-intensive inquiry, the determination of objective reasonableness of the use of force used by Sergeant Lazure must be made by a jury, and not on a motion for judgment on the pleadings. *See Hemphill v. Schott*, 141 F.3d 412, 417 (2d. Cir. 1998) (finding that the question of whether the use of potentially deadly force was reasonable remained in dispute when two of the factors were contested).

> Although the Second Circuit has not yet stated the level of force that the use of a K-9 police dog constitutes, . . . [o]ther federal courts of appeals that have addressed the use of a K-9 have held the use of a properly-trained police dog generally does not reach the high degree of force constituting deadly force. . . . These courts have found, however, that the use of the bite-and-hold technique by a police dog constitutes a significant degree of force.

*Whitfield v. City of Newburgh*, No. 08 CV 8516 (RKE), 2015 WL 9275695, at *9 (S.D.N.Y. Dec. 17, 2015) (citations and emphasis omitted). As a result, the Court concludes that "the use of a police dog constitutes, at a minimum, a significant degree of force," *id.* at *10, especially because Sergeant Lazure has pointed to no cases holding that similar conduct toward a mentally ill arrestee is reasonable under the Fourth Amendment.

Accordingly, the excessive force claim against Sergeant Lazure will not be dismissed, and the Court denies judgment on the pleadings on this ground as to the Fourth Amendment.

Because Mr. Scott's excessive force claim is not cognizable under the Fourteenth

Amendment, *Graham*, 490 U.S. at 394–95, and the Eighth Amendment applies only to sentenced

inmates, *Darnell v. Piniero*, 849 F.3d 17, 30 (2d Cir. 2017), Sergeant Lazure's motion for

judgment on the pleadings is granted with respect to Mr. Scott's failure to state cognizable

Eighth and Fourteenth Amendment claims.

### B.  The Issue of Qualified Immunity

Even if Sergeant Lazure violated Mr. Scott's Fourth Amendment rights and used

excessive force, however, Sergeant Lazure may still be entitled to summary judgment on

qualified immunity grounds. *See generally Gonzalez v. City of Schenectady*, 728 F.3d 149, 158

(2d Cir. 2013) (affirming district court's summary judgment ruling that, though defendants

arrested plaintiff without probable cause and conducted an unreasonable search under the Fourth

Amendment, defendants were nevertheless entitled to summary judgment on qualified immunity

grounds).

Qualified immunity "protects government officials 'from liability for civil damages

insofar as their conduct does not violate clearly established statutory or constitutional rights of

which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)

(quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity may be asserted

on a motion to dismiss because "qualified immunity provides government officials 'immunity

from suit rather than a mere defense to liability.'" *Looney v. Black*, 702 F.3d 701, 705 (2d Cir.

2012) (quoting *Pearson*, 555 U.S. at 231). A defendant asserting a qualified immunity defense

on a motion to dismiss, however, must overcome a "formidable hurdle," *McKenna v. Wright*,

386 F.3d 432, 434 (2d Cir. 2004), as "'the plaintiff is entitled to all reasonable inferences from

the facts alleged, not only those that support his claim, but also those that defeat the immunity

defense," *Neary v. Wu*, 753 F. App'x 82, 84 (2d Cir. 2019) (quoting *McKenna*, 386 F.3d at 436).

A defense of qualified immunity will support a motion to dismiss, therefore, only if the plaintiff

cannot state any facts that would prevent application of qualified immunity. *McKenna*, 386 F.3d

at 436.

      In considering whether a state official is protected by qualified immunity, a court must

determine "(1) whether plaintiff has shown facts making out violation of a constitutional right;

(2) if so, whether that right was 'clearly established'; and (3) even if the right was 'clearly

established,' whether it was 'objectively reasonable' for the officer to believe the conduct at

issue was lawful." *Gonzalez*, 728 F.3d at 154. Thus, qualified immunity would be denied to an

official only if (1) the facts alleged or shown by the plaintiff state a violation of a statutory or

constitutional right by the official and (2) the right was clearly established at the time of the

challenged conduct. *See Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citation omitted).

      Courts need not consider these two questions in order, and may consider the latter

question first, which may be "particularly appropriate where the former turns on difficult or

novel questions of constitutional or statutory interpretation, but it is nevertheless clear that the

challenged conduct was not objectively unreasonable in light of existing law." *Zalaski v. City of

Hartford*, 723 F.3d 382, 388–89 (2d Cir. 2013) (citing *Pearson v. Callahan*, 555 U.S. 223

(2009)) (internal quotation marks omitted).

      Also, although the Fourth Amendment prohibits the use of excessive force in effectuating

an arrest, "the right to make an arrest or investigatory stop necessarily carries with it the right to

use some degree of physical coercion or threat thereof to effect it[.]" *Graham*, 490 U.S. at 396.

"An officer conducting a search is entitled to qualified immunity where clearly established law

does not show that the search violated the Fourth Amendment." *Pearson*, 555 U.S. at 243–44 (citing *Anderson v. Creighton*, 483 U.S. 635, 641 (1987)).

Qualified immunity "affords government officials 'breathing room' to make reasonable—even if sometimes mistaken—decisions." *Distiso v. Cook*, 691 F.3d 226, 240 (2d Cir. 2012) (quoting *Messerschmidt v. Millender*, 565 U.S. 535, 553 (2012)). "The qualified immunity standard is 'forgiving' and 'protects all but the plainly incompetent or those who knowingly violate the law.'" *Grice v. McVeigh*, 873 F.3d 162, 166 (2d Cir. 2017) (quoting *Amore v. Novarro*, 624 F.3d 522, 530 (2d Cir. 2010)).

"[T]he clearly established right must be defined with specificity." *City of Escondido, Cal. v. Emmons*, 149 S.Ct. 500, 501 (2019) (finding that defining the clearly established as "the right to be free of excessive force" was too general). It is a "constitutional right[ ] of which a reasonable person would have known" and "reasonableness is judged against the backdrop of the law at the time of the conduct." *Kisela v. Hughes*, 138 S.Ct. 1148, 1152 (2018) (per curiam) (internal citations and quotations omitted). "[S]pecificity is especially important in the Fourth Amendment context, where the Court has recognized that it is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts." *Mullenix v. Luna*, 136 S.Ct. 305, 308 (2015) (per curiam). "For law to be clearly established, it is not necessary to identify a case directly on point. But precedent must have spoken with sufficient clarify to have placed the constitutional question at issue beyond debate." *Mara v. Rilling*, 921 F.3d 48, 68 (2d Cir. 2019) (citing *al-Kidd*, 653 U.S. at 735).

Sergeant Lazure argues that he is entitled to qualified immunity, Def.'s Mem. at 26–28, because he "was faced with a tense and uncertain situation that demanded split-second

decisions," and he emphasizes that he was alone and "trying to apprehend a robbery suspect who was believed to be armed." *Id.* at 26. According to Sergeant Lazure, his conduct in deploying both K-9 Jett and the Taser was objectively reasonable and did not violate any of Mr. Scott's clearly established. *Id.* at 28.

The Court agrees.

The prohibition of excessive force while effectuating an arrest is clearly established. *See, e.g.*, *Thomas v. Roach*, 165 F.3d 137, 143 (2d Cir. 1999) ("The Fourth Amendment protects against the use of excessive force by police officers in carrying out an arrest."). But the use of some degree of force during an arrest is not necessarily unreasonable. *See Graham*, 490 U.S. at 396 ("[T]he right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it[.]").

The issue here is whether it was objectively reasonable for Sergeant Lazure to believe his use of a Taser and deployment of a canine on Mr. Scott was lawful. *See Muschette on Behalf of A.M. v. Gionfriddo*, 910 F.3d 65, 70 (2d Cir. 2018) ("An officer is entitled [to] qualified immunity if '*any* reasonable officer, out of the wide range of reasonable people who enforce the laws in this country, *could have* determined that the challenged action was lawful.'") (quoting *Figueroa v. Mazza*, 825 F.3d 89, 100 (2d Cir. 2016)). The answer here is yes.

At the time of this arrest, it was "clearly established that officers may not use a TASER against a compliant or non-threatening suspect." *Muschette*, 910 F.3d at 69 (citing *Tracv v. Freshwater*, 623 F.3d 90, 96–98 (2d Cir. 2010); *Garcia v. Dutchess Cty.*, 43 F. Supp. 3d 281, 297 (S.D.N.Y. Aug. 21, 2014) (concluding that it is clearly established in the Second Circuit that "it [is] a Fourth Amendment violation to use 'significant' force against arrestees who no longer actively resisted arrest or posed a threat to officer safety")).

As a result, if Mr. Scott was non-compliant or threatening, then the use of significant force—deploying a canine and using a Taser—was objectively reasonable. Even viewing the circumstances in the light most favorable to Mr. Scott, as the Court must at this stage, Mr. Scott was both non-compliant and threatening. In his Complaint, Mr. Scott admitted that rather than comply, allegedly due to his mental condition not allowing him to process Sergeant Lazure's commands, he "simultaneously chok[ed] and rubb[ed] the K-9 telling it in calm tones to be a good puppy." Compl. ¶ 17. The Incident Report written by Sergeant Lazure, and filed as an exhibit to Mr. Scott's Complaint, further details Mr. Scott's active resistance. From the beginning, Mr. Scott did not heed orders, and he ran away after breaking free from Sergeant Lazure's grip. Incident Report at 1–2. Only then did Sergeant Lazure deploy the canine, and he only deployed the Taser when Mr. Scott began choking K-9 Jett. *Id.* at 2–3.

There are no Supreme Court or Second Circuit cases precluding the single use of a Taser or deploying a canine to stop a fleeing suspect who fails to heed a police officer's commands and actively resists arrest. Indeed, reported cases suggest that a use of force was reasonable. *See, e.g.*, *McLeod v. Town of Brattleboro*, 548 F. App'x 6 (2d Cir. 2013) (affirming grant of summary judgment on excessive force claim for use of Taser because no reasonable juror would find officer used excessive force by using Taser on suspect who rose from ground following high-speed chase rather than submit to arrest); *Fortunati v. Vermont*, 503 F. App'x 78, 81 (2d Cir. 2012) (police officer action in shooting bean bag rounds at mentally ill suspect they understood to be armed or in close proximity to a weapon was "objectively legally reasonable"); *Tracy*, 623 F.3d at 97 (qualified immunity warranted on claim for use of force, strikes with flashlight and pepper spray, to subdue suspect where suspect was wanted for potentially serious crime and was actively resisting arrest); *Crowell v. Kirkpatrick*, 400 F. App'x 592, 595 (2d Cir. 2010) (qualified

16

immunity warranted for use of Taser as last resort against protestors who refused unchain themselves and leave premises).

In the absence of cases holding similar conduct unconstitutional, the Court concludes that a reasonable officer in Sergeant Lazure's position would not understand his conduct to violate any clearly established law. *See Emmons*, 149 S. Ct. at 501 ("[T]he clearly established right must be defined with specificity."); *Muschette*, 910 F.3d at 70 ("To determine whether the relevant law was clearly established, we consider the specificity with which a right is defined, the existence of Supreme Court or Court of Appeals case law on the subject, and the understanding of a reasonable officer in light of preexisting law." (citation and internal quotation marks omitted)).

Accordingly, because Sergeant Lazure is protected by qualified immunity, Mr. Scott's excessive force claim will be dismissed.

### C. Claims Against K-9 Jett

Mr. Scott includes Sergeant Lazure's dog, Jett, as a defendant. To state a section 1983 claim, Mr. Scott must allege facts showing that "a person" acting under color of state law violated his constitutional or federally protected rights. 42 U.S.C. § 1983. A dog, however, lacks capacity to be sued and is not a person within the meaning of Section 1983. *See Bigwarfe v. Bresnahan*, Civ. No. 8:18-CV-578 (GTS/DJS), 2018 WL 6174188, at *3 (N.D.N.Y. June 5, 2018) (police dog is not a person and cannot be sued under section 1983), *report and recommendation affirmed and adopted by* 2018 WL 5077196 (N.D.N.Y. Oct. 18, 2018); *Dunham v. City of New York*, No. 11 Civ. 1223 (ALC) (HEP), 2014 WL 1760330, at *2 (S.D.N.Y. May 2, 2014) (same); *see also Dye v. Wargo*, 253 F.3d 296, 299 (7th Cir. 2001) (plaintiff could not bring section 1983 action against police dog).

Accordingly, all claims against Jett are dismissed under 28 U.S.C. § 1915A(b)(1).

**D.  Claims Against Town of West Hartford**

The Town of West Hartford is not named as a defendant, yet Mr. Scott includes a claim against it as his second claim for relief, and as a defendant in the handwritten version of the Complaint. In the Complaint's case caption and the list of parties, Mr. Scott only names Sergeant Lazure and K-9 Jett as Defendants. Compl. at 1–3.

Federal Rule of Civil Procedure 10(a) requires that all parties be named in the "title of the complaint," i.e., the case caption. Fed. R. Civ. P. 10(a). Because the Town of West Hartford is not included in the title or the list of parties with the other Defendants, it is not a defendant in this case, and any claims against it will be dismissed on this ground, as well as on the merits discussed below under the Court's initial review under 28 U.S.C. § 1915A.

Claims against municipalities are considered under the standard for municipal liability established in *Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978). A municipality cannot be found liable merely because it employs a tortfeasor. *Id.* at 691. To state a cognizable claim for municipal liability, Mr. Scott must demonstrate the existence of an officially adopted policy or custom that caused his injury and a direct causal connection between that policy or custom and the deprivation of a constitutional right. *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007); *see also Monell*, 436 U.S. at 694. He must show that his rights were violated as a result of a municipal policy, a municipal custom or practice, or the decision of a municipal policymaker with final policymaking authority. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988).

A municipal policy exists when there is a decision by an official with policymaking authority, or a formal enactment by the municipality's governing body. *Monell*, 436 U.S. at 690. A municipal policy generally encompasses more than one incident. *See Ricciuti v. N.Y.C. Transit*

*Auth.*, 941 F.2d 119, 123 (2d Cir. 1991) ("[A] single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy[.]").

Mr. Scott alleges in conclusory fashion that the Town of West Hartford has not implemented policies to ensure compliance with the ADA. Compl. ¶ 24. Because there are no factual allegations to support this claim, even if the claim is liberally construed as the absence of a policy, the Court concludes that Mr. Scott has failed to allege a plausible claim for municipal liability based on the absence of a policy.

The claim also could be construed to assert that Sergeant Lazure acted under a municipal custom of disregarding the rights of disabled persons. A municipal custom is less formal than a policy and may be shown by the existence of a practice "so widespread as to have the force of law." *Board of Cty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997). The practice must be "permanent and well settled." *Praprotnik*, 485 U.S. at 127. A practice cannot be inferred from a single incident. *City of Okla. City v. Tuttle*, 471 U.S. 808, 823–24 (1985); *see also Giaccio v. City of New York*, 308 F. App'x 470, 471-72 (2d Cir. 2009) (dismissing *Monell* claim where plaintiff identified, at most, only four examples of injury complained of); *Bowles v. N.Y.C. Transit Auth.,* Nos. 00 Civ. 4213 BSJ MHD, 03 Civ. 2073 BSJ MHD, 2006 WL 1418602, at *16 n.31 (S.D.N.Y. May 23, 2006) (finding that "the combined evidence of only two incidents would still be insufficient to show a 'custom or usage' under the *Monell* standard").

Mr. Scott alleges only a single incident, which is insufficient to support a municipal custom or practice. *See id.* Accordingly, all claims against the Town of West Hartford are dismissed under 28 U.S.C. § 1915A(b)(1).

Mr. Scott does not indicate whether he names Sergeant Lazure in his individual or official capacity. A claim against a municipal officer in his official capacity is, in essence, a claim against the city for which he works. *See Brandon v. Holt*, 469 U.S. 464, 471–72 (1985) (noting that suit against municipal official in his official capacity was a suit against the municipality because liability for any judgment would rest with the municipality). Because the Court has concluded that Mr. Scott fails to allege facts to state a claim for municipal liability, there is no factual basis for a claim against Sergeant Lazure in his official capacity. Any claims against Sergeant Lazure in his official capacity are therefore also dismissed under 28 U.S.C. § 1915A(b)(1).

### E.  The ADA Claims

Mr. Scott contends that Sergeant Lazure violated his rights under Title II of the ADA, 42 U.S.C. § 12101, *et seq.*, by failing to refrain from using force when he stated that voices told him to hurt Sergeant Lazure. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by such entity." 42 U.S.C. § 121342. There is no individual liability, however, under the ADA. *See, e.g.*, *Fox v. State Univ. of New York*, 497 F. Supp. 2d 446, 451 (E.D.N.Y. 2007). Thus, any ADA claim would be cognizable only against the Town of West Hartford, and not Sergeant Lazure individually.

To state a cognizable ADA claim, Mr. Scott must establish three factors: (1) he is a qualified person with a disability, (2) the defendants in their individual or official capacities are considered an entity subject to the ADA, and (3) he was denied the opportunity to participate in

or benefit from an institutional program, service, or activity, or otherwise discriminated against because of his disability. *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003).

"The Second Circuit has not addressed the issue of whether an arrest itself is a program, service or activity covered by the ADA[.]'" *Valanzuolo v. City of New Haven*, 972 F. Supp. 2d 263, 273 (D. Conn. 2013) (internal quotation marks and citation omitted). Nor has the Supreme Court addressed whether the ADA applies to arrests. *See City and Cty. of San Francisco, Calif. v. Sheehan*, 135 S. Ct. 1765, 1773 (2015) (declining to decide whether the ADA applies to arrests). Courts have, however, recognized two claims relating to an arrest: a claim for wrongful arrest based on the disability and not on any criminal activity, and a claim for a proper arrest but where officers failed to accommodate a disability during the investigation or arrest, thus causing the suspect "to suffer greater injury or indignity than other arrestees." *Valanzuolo,* F. Supp. 2d at 273 (quoting *Ryan v. Vt. State Police*, 667 F. Supp. 2d 378, 387 (D. Vt. 2009)). "Under the ADA, law enforcement officers have a duty 'to provide arrestees who are disabled with reasonable accommodations once an arrest of a disabled person has been accomplished'." *Id*. at 273–74 (quoting *Ryan*, 667 F. Supp. 2d at 389).

Mr. Scott was arrested because he, and the car he was in, fit Dispatch's description from the robbery. Incident Report at 1. Thus, his claim would be of the second type described above, involving a proper arrest, but where officers allegedly failed to accommodate his disability. Mr. Scott allegedly suffers from a schizoaffective disorder and post-traumatic stress disorder, Ex. B: Interdisciplinary Treatment Plan Review, ECF No. 1-2 (Apr. 11, 2018), but does not allege facts showing that he is disabled within the meaning of the ADA.

Even if Mr. Scott was disabled under the ADA, he does not allege any discriminatory treatment after his arrest was accomplished and identifies no injury or indignity he suffered that

would not have been suffered by any arrestee who was actively resisting arrest and attempting to flee. Thus, Mr. Scott fails to allege facts to support a plausible ADA claim. *See, e.g.*, *De Boise v. Taser Int'l, Inc.*, 760 F.3d 892, 899 (8th Cir. 2014) (ADA did not apply to an arrest of a man with schizophrenia because "[d]ue to the unexpected and rapidly evolving circumstances, the officers were not required to hesitate and consider other possible actions in the course of making such split-second decisions" (quotations and citation omitted)).

Accordingly, his claim under the ADA will be dismissed under 28 U.S.C. § 1915A(b)(1).

### F.  Remaining State Constitutional Claims

Because the Court has dismissed all federal causes of action, it declines to exercise supplemental jurisdiction over the remaining state law claims. *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction."); *see, e.g.*, *Castellano v. Bd. of Trustees*, 937 F.2d 752, 758 (2d Cir. 1991) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1991)) ("[I]f the federal claims are dismissed before trial . . , the state claims should be dismissed as well.").

## IV.   CONCLUSION

For the reasons explained above, the Court **GRANTS** the motion for judgment on the pleadings.

The following claims are **DISMISSED** under 28 U.S.C. § 1915A(b)(1): all claims against K-9 Jett and the Town of West Hartford; the ADA claim; and any claims against Sergeant Lazure in his official capacity. The Court declines to exercise supplemental jurisdiction over Mr. Scott's remaining state constitutional claims.

The Clerk of Court is respectfully requested to close this case.

**SO ORDERED** at Bridgeport, Connecticut, this 22nd day of May, 2020.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE